Curia, per Butler, J.
Although the evidence is not satisfactory on the point, we must assume from the finding of the jury, properly instructed, that the note on which this action is brought, was duly delivered to the plaintiff by the intestate, in his life time; which does not, however, preclude the main question, whether it imposes any obligation on the defendants to pay it. The note contains no condition, that the alleged gift of it, was defeasible on the recovery of the donor. It is absolute in its terms, and but for the evidence, which explained the circumstances under which it was given, it would be regarded as any other note for the payment of money. It appeared however, very clearly, that the intestate entered into a voluntary obligation, that his administrators, after his death, should pay plaintiff #500. It was a bona fide attempt to give the plaintiff that much money, without making a will And these questions arise — is it valid as a promissory note, for good consideration? or as a gift of so much money causa mortis? Regarding it in the first point of view, the authorities are entirely satisfactory that it cannot be sustained as a good note. It is without valid consideration: a naked revocable promise. In the case of Pearson v. Pearson, 7 Johns. R. 26, it was held that a parol promise to pay money, as a gift, was no more a ground of action, than a promise to deliver a chattel as a gift. Upon the authority of this case, the case of Fink v. Cox, 18 J., 145, was decided. The last *313 case was different from the first, in this, that it was brought on a voluntary note, payable by the intestate of defendant, to his son, sixty days after date. It was negotiable, being payable to order, and therefore transferable by the son. It was strongly contended that the son, the plaintiff, had a vested right in the note, as he could have transferred it, and thus have made it good — and that it was supported by the consideration of blood. Yet the court said that there was no case where a personal action had been founded on an executory contract, where a consideration was necessary, in which the consideration of blood, and natural love and affection, had been held sufficient. The case which we have under consideration, is in no wise distinguishable from the above, except that the obligation is not negotiable, and was to be paid after the death of the promissor. It is executory and without consideration — and what is more, the payee could not have realized any benefit from it at the time of its execution, by transferring it to another — which restricts and controls the paper so far as to leave it entirely at the option of the maker, or his representatives, to pay it or not. • In other words, it never could have been enforcible against them, by a third person. As a promise then, absolutely made, inter vivos, it was utterly void.
Can it be placed on a better footing, by considering it a donatio causa mortis? On the contrary, I think this view of it would put it in a worse situation. Courts have been jealously distrustful of such gifts. They are too frequently extorted by fraud, from the infirmities 'of dying men; or aftér their death, sustained by combination and perjury. They have been sometimes established, upon full proof, in derogation of a valid will. Our law is different from that of England and other States of the Union, so far as I am informed, as it requires three witnesses to a will of personal property. Its provisions are founded on the presumption, that the facility of a sick bed may be taken advantage of. In Consulting the spirit of the law, we are well warranted in discountenancing all donations causa mortis. I do not undertake to say that such gifts may not be made, provided the thing intended to be given is capable of delivery, and has been delivered either by actual tradition or by *314 written title. To constitute a valid gift, either inter vivos or causa mortis, the donee must have an immediate right to the dominion of the chattel; in the latter case defeasible, on the recovery of the donor. Where the corpus of the thing is put in his possession by delivery, his dominion is complete, and his title is as good against the donor as any one else. The same conclusion follows where the thing is not present, but a deed for it is delivered to the donee. The deed gives him a right to take under his dominion the thing described. The donor cannot dispute his right. Where the chattel is a slave, a horse, or a cow, there can be little difficulty. I have no doubt that money may also be the subject of such gift: as when it is in a box, or bag, and has specific identity. I think this may be regarded as a tolerable test. In all cases where the donee could assert and successfully maintain his title, in an action of trover to the thing given, the gift would be góod in law. Apply this test to the case under consideration: Could the plaintiff have maintained his action of trover for the money intended to have been secured by the note. It is more than probable that at the time the note was signed, the intestate had not so much money in his house. The money was probably to be raised by the sale of his estate after his death. How then could the plaintiffhave had a dominion, or a right of dominion, over any money. — A promise to deliver a thing, is inconsistent with the delivery of the thing itself, or its title, which in effect is the same. I cannot perceive myself how this case, in principle, can be distinguished from those of Pearson v. Pearson, and Fink v. Cox. When resolved into its true character, it is a naked promise, either to pay or deliver money, after the death of the intestate; having some of the ingredients, but wanting the validity of a testamentary paper. It was on the part of the intestate, a bona fide, but impotent attempt to make a will, and can confer no right. The case of Wright v. Wright, 1 Cow. 590, has been mainly relied on to sustain this action. That case is certainly in point, but it seems to me not to be founded in principle, and has no authority to sustain it. It stands alone on the authority of the judges who pronounced the judgment. It is so much opposed to the general principles of law and to the tenor and spirit *315 of our law especially, that it cannot receive the sanction of this court. Whether a chose in action may be the subject of a valid gift, where the demand is due to the alleged donor from a third person, is a question which is not fairly involved in this case.— The doctrine on the subject is fully and ably discussed by Lord Hardwicke, in the case of Ward v. Turner, 2 Ves. Sen. 431; and by Lord Loughborough, in the case of Tate v. Hilbert, 2 Ves. Jr. 111. In the first case it was held, that to make a good gift causa mortis, there must be an actual delivery of the specific thing ; in the other, this general doctrine was qualified, by holding that a deed in writing would be equivalent to a delivery, and would confer a title. From both cases, I think it may be well inferred, that if the thing given be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed before the donee could take. The general doctrine on this subject cannot affect the case before the court, further than to show that where the donor has secured any control in himself, or has omitted to give, by valid transfer, the entire dominion to another, the law will not support the transfer as a gift either inter vivos, or causa mortis.
Boozer & Fair, for the motion.
Gregg & Caldwell, contra.
From the views which I have taken, the defendant must have a new trial, which in effect will authorize the succeeding judge to grant a nonsuit.
RichaRdson, O’Neall, Evans, and Eakle, Justices, concurred.